IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

Molly Rukse, as parent and natural
Guardian for her minor child A.R.,

    Plaintiffs,

vs.                                             Civil Action No.: 3:14-cv-00236/MCR/EMT

Wal-Mart Stores, Inc. and Wal-Mart
Stores East, LP,

    Defendants.

---

**MOTION OF WAL-MART STORES, INC. AND WAL-MART STORES EAST, LP
TO EXCLUDE THE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT,
DAVID RONDINONE, PH.D., P.E., AND BRIEF IN SUPPORT**

Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP ("Wal-Mart"), by and through undersigned counsel, and file this Motion to Exclude the Opinions and Testimony of Plaintiff's Expert, David Rondinone, Ph.D., P.E., and state:

**I.    INTRODUCTION**

This is a product liability case in which Plaintiff alleges that on December 29, 2013, three year old A.R. suffered severe burns when a gas can, manufactured by Blitz U.S.A, Inc. ("Blitz") and sold by Wal-Mart, exploded in the backyard of his home. A.R. was in the backyard with his father, Justin Rukse, prior to the accident. Rukse had used gasoline to start a fire in an outdoor fire pit. Rukse admitted that he placed the Blitz gas can on the ground and then carried a load of trash to the curb. He heard an explosion, ran to the backyard, and observed A.R. in flames.

In support of her claims against Wal-Mart, Plaintiff intends to introduce the testimony of Rondinone, a mechanical engineer with Berkeley Engineering and

Research, Inc. Rondinone has offered opinions that (1) the container is defectively designed because it does not incorporate a flame arrestor; (2) the warnings on the container are inadequate; and (3) the container is defectively designed because it does not incorporate a child-resistant closure on the spout. As the proponent of Rondinone's testimony, Plaintiff has the burden of establishing its admissibility. *Wells v. Ortho Pharm. Corp.*, 788 F.2d 741, 747-48 (11th Cir. 1986). As set forth below, Rondinone's opinions are inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See also Kuhmo Tire v. Carmichael*, 526 U.S. 137 (1999). In addition, Rondinone's April 13, 2015 Report ("Report"), attached at Exhibit A, contains 21 additional separately numbered or lettered purported "opinions" that should be excluded because they are factual statements presented as known facts in the guise of an opinion, or are otherwise improper as the subject of Rondinone's opinion testimony. Ex. A at 5 A-F; H-O; Q-R; T-X.

## II. THE APPLICABLE LAW

In *Daubert*, the Supreme Court explained that trial courts must act as "gatekeepers" tasked with screening out "speculative, unreliable expert testimony." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert*, 509 U.S. at 597). In that role, trial courts may consider a non-exhaustive list of factors including: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential error rate of the technique; and (4) whether the technique is generally accepted in the scientific community. *Id.* Furthermore, *Kumho* emphasized that the goal of gatekeeping is to

ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo*, 526 U.S. at 152.

Federal Rule of Evidence 702, as amended in response to *Daubert* and *Kumho*, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) The testimony is based on sufficient facts or data;
>
> (c) The testimony is the product of reliable principle and methods; and
>
> (d) The expert has reliably applied the principles and methods to the facts of the case.

As such, the following three requirements must be met: First, "the expert must be qualified to testify competently regarding the matter he . . . intends to address"; second, the expert's "methodology . . . must be reliable as determined by a *Daubert* inquiry"; and third, the expert's "testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick*, 613 F.3d at 1335.

### III. RONDINONE'S OPINION THAT THE PORTABLE PLASTIC ONSUMER GASOLINE CONTAINER IS DEFECTIVELY DESIGNED BECAUSE IT DOES NOT INCORPORATE A FLAME ARRESTORIS INADMISSIBLE

#### A. Rondinone is Not Qualified to Offer this Opinion.

Rondinone is not an experienced designer portable consumer gasoline containers or flame arrestors for portable consumer gasoline containers. His only exposure to these design issues has been as a retained expert performing testing and

3

testifying while being paid by Plaintiff. Plaintiff must present experts who can testify competently as to the technicalities of portable consumer gasoline container design and manufacturing. Individuals with no design experience or expertise with portable consumer gasoline containers should not be permitted to offer such expert testimony. Rondinone's experience in mechanical engineering does not qualify him to opine that the consumer container is defectively designed because it does not incorporate a flame arrestor. See Perkins v. Volkswagen of Am., Inc., 596 F.2d 681, 682 (5th Cir. 1979) (affirming trial court's decision to allow a mechanical engineer with no experience in designing entire automobiles to offer opinions on general mechanical engineering principles but not on automotive design).

Although Rondinone has experience in testing whether or not vapors will ignite in the head space of a gas can – all gained in the context of litigation - this experiences does not make him qualified to opine that a product is defective for lack of a flame arrestor. Rondinone has never participated in the design or manufacture of flame arrestors for portable consumer gasoline containers. He simply does not have that expertise.

### B. Rondinone's Opinion Does Not Have a Reliable Basis.

#### 1. Rondinone Has Not Proposed or Tested a Specific Alternative Design.

To prove the design defect claim, Plaintiff must prove that there was an avoidable flaw in the design of the product and that an alternative safer design was commercially and technologically feasible and would have prevented the injuries. The requirement of proof of a feasible alternative safer design for a defective design claim is embodied in Restatement (Second) Torts 402A, which was adopted as the law of

4

Florida in *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976).[1] The *West* decision and the test of Section 402A make clear that, to prove liability, it is not enough to prove that a product is "unreasonably dangerous." The plaintiff must also prove a "defective condition." Florida law mandates that a "defective condition" arises only if the product could have been designed in some alternative way that would have avoided the hazard and prevented the injury. A hazard presented by a product must be due to an avoidable "defective condition," as opposed to some intrinsic quality that makes the product dangerous.

Therefore, demonstrating a feasible alternative safer design as proof of a design defect is essential to a claimant's *prima facie* case. Rondinone's opinion does not have a reliable basis because he does not have the expertise to propose a specific alternative design and has failed to conduct the breadth of testing needed to demonstrate that an alternative design is ready for the marketplace.

Rondinone has done no detailed design work showing how a flame arrestor would actually be put into a mass-produced portable plastic gasoline container and admits his alternative design is nothing more than a concept. Rondinone has done nothing to test the feasibility of any actual alternative design for the Blitz container. Rondinone admits that he has not participated in the design or manufacture of a flame arrestor and has never designed a flame arrestor with the intention that it be produced and sold to consumers. Ex. B at 70:15-16, 19-22. Additionally, he has no patents on flame arrestor designs. Ex. B at 70:23-25.

---

[1] In federal diversity actions, such as the present action, state law (Florida law) governs substantive issues and federal law governs procedural issues. *McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004).

5

Furthermore, Rondinone has done nothing to prepare an analysis of the actual costs, including equipment modifications and labor costs, to incorporate a flame arrestor in a portable consumer gasoline container. Ex. B at 124:16-25; 125:7-9. He also has not tested and evaluated any potential unintended consequences that could come from the design change, even though he agrees this is needed prior to introducing a product to the market. Ex. B at 152:13-15. Rondinone will opine that if one goes through the process of designing a flame arrestor, then unintended consequences would be addressed. Ex. B at 152:6-15.

Rondinone's concept of what might be done does not provide a reliable basis for his opinion that the Blitz gas can is defective. See *Husky Indus., Inc. v. Black,* 434 So. 2d 988 (Fla. 4th DCA 1983) (reversing jury verdict in favor of plaintiff against manufacturer and retailer of a can of charcoal lighter fluid because plaintiff failed to prove an alternative safer design for the can that would have prevented his injuries). In determining whether a design defect exists, Florida law requires the trier of fact to keep in mind the following: (1) a manufacturer or retailer is not an insurer and (2) a manufacturer does not have to make a product accident proof (or a retailer does not have to sell an accident proof product). *Id.* at 991 (citing *Houdaille Indus., Inc. v. Edward,* 374 So. 2d 490 (Fla. 1979); *West,* 336 So. 2d 80 (Fla. 1976); *Rice v. Walker,* 359 So. 2d 891 (Fla. 3d DCA 1978); *Royal v. Black & Decker Mfg Co.,* 205 So. 2d 307 (Fla. 3d DCA 1978); *Builders Shoring & Scaffolding Equip. Co. v. Schmidt,* 411 So. 2d 1004 (Fla. 5th DCA 1982). In *Husky,* the plaintiff was injured when applying, contrary to the warning, charcoal lighter fluid to hot coals and the container exploded. Plaintiff claimed that the can was defective because it lacked a flame arrestor and because it

6

was black in color. Plaintiff's claims failed because he was unable to provide any expert testimony that a can with a flame arrestor was a feasible alternative safer design that would have prevented the injuries. *Id.* at 993. Likewise, plaintiff was unable to provide any expert testimony that a different color can was a feasible alternative safer design. *Id.* at 995.

Additionally, Rondinone's lack of expertise in human factors science and his undisputed lack of testing as to the wants and desires of consumers, and any testimony as to whether the addition of a flame arrestor would impair the utility, usefulness, practicality or desirability of the product, lacks the proper support to meet the standards required for expert opinions.

### 2. Rondinone's Opinion is Not Supported by Relevant or Reliable Literature.

Rondinone is unable to cite to any published scientific literature to prove that a consumer gas can with a flame arrestor is a feasible alternative safer design. In fact, ASTM International ("ASTM"), an organization that establishes standards for consumer products, including gas cans, formed a subcommittee task force and, working in cooperation with the CPSC, contracted with the Worchester Polytechnic Institute ("WPI") to study the issue. Specifically, under the contract, WPI was retained to evaluate whether vapor inside portable consumer gas cans can ignite, and if so, under what circumstances; if an internal ignition is possible, whether an effective mitigation device exists; if such a device exists whether it is durable and maintains its effectiveness; and whether use of such a mitigation device is associated with unintended consequences, rendering it unsafe. This study has demonstrated that vapor ignition inside a gas container can occur only under rare circumstances, and that a

7

majority of flame arrestors tested by WPI failed to stop flame propagation. The scientists at WPI have opined that, based on laboratory testing, they do not recommend including flame arrestors in portable consumer gas cans at this time, and more study is needed before a recommendation can be made.

### 3. Rondinone's Opinion is Not Generally Accepted.

Rondinone could not identify in his deposition a single manufacturer that made a portable consumer gasoline container with a flame arrestor at the time the subject can was purchased. Ex. B at 52:19-25; 55:3-9. Currently, there are no manufacturers of portable consumer gasoline containers that incorporate a flame arrestor in portable plastic consumer gas cans. While Rondinone has suggested that a debris screen in a No-Spill gas container can act as a flame arrestor, Tom Cray, the owner of No-Spill, testified the device is a screen for the purpose of keeping debris and bugs out of the fuel while dispensing. Ex. C at 31:21-32:2. WPI has also tested the screen in the No-Spill can and reported that it failed. Ex. D at 2. Rondinone's one-time test of a No-Spill screen cannot be relied upon especially when other experts have performed tests with differing results.

Rondinone also alleges that pursuant to his test the debris screen contained in a Rubbermaid gas can constitutes a flame arrestor. Ex. B at 46:25. This position is contrary to the opinion of plaintiffs' expert in prior litigation, Lori Hasselbring, Ph.D. She tested a Rubbermaid screen on two occasions and determined in October, 2002, that the screen failed resulting in explosions. She opined that plastic screens in Rubbermaid containers do not operate as flame arrestors. Ex. E at 4:18-5:8.

Furthermore, Rondinone opines that he has tested both a flame arrestor from Eagle Manufacturing and Justrite Manufacturing which passed his testing. However, these flame arrestors failed when tested by WPI. Ex. D at 4-5.

Rondinone admits that, as to flame arrestors, that he tested and "passed," he has not attempted to determine at what point these flame arrestors will fail. Ex. B at 47:21-48:1. However, he does agree that such testing "would give you a very good representation of the performance of a particular flame arrestor." Ex. B at 48:12-14.

No standards agency has required that flame arrestors be included in portable plastic consumer gasoline containers because at this time, the ASTM study is not complete and no final conclusions have been reached as to the safety and effectiveness of any particular flame arrestor device.

Rondinone's design-defect opinion should be excluded as it lacks the support of the gas can industry, ASTM, and WPI, the engineering school retained by ASTM to evaluate flame arrestors. See Dhillon v. Crown Controls Corp., 269 F.3d 865, 870-71(2d Cir. 2001) (excluding expert whose proposed product design change was not used by any other manufacturer and was not recommended by any regulatory body or standards organization). Even Rondinone confirmed in his deposition that he was unsure of any portable consumer gasoline containers that incorporated a flame arrestor on the market at the time that Justin Rukse purchased the subject gas can in 2007. Ex. B at 52:19-25; 55:3-9.

### 4. Rondinone's Opinion was Developed for Litigation.

Prior to their involvement in litigation, Rondinone and his business partner, Glen Stevick, had never tested portable consumer gas cans. Ex. B at 75:19-24. Lawyers

9

paid for their testing and their work on the flame arrestors used in their testing. Ex. B at 78:6-12.

### C. Rondinone's Opinion Does Not Fit the Facts of this Case.

Rondinone is not opining that the container is defective because something malfunctioned on the container, but rather he is advocating that something be added to the container. Much of Rondinone's testimony regarding flame arrestors used in gasoline storage devices pertains to <u>commercial or industrial</u> storage cans, not <u>portable plastic consumer containers</u>. Rondinone points to OSHA requirements mandating flame arrestors in "safety cans." Ex. A at 5L, 5V. Approved industrial safety cans are required by law to be used in commercial and industrial operations where flammable liquids—not just gasoline—are used and stored. These containers are not a substitutable item for a portable plastic consumer gas can, which is the focus of this litigation. OSHA 29CFR 1910.106(a)(29) defines a safety can as an approved container, of not more than 5 gallons capacity, having a spring-closing lid and spout cover and so designed that it will safely relieve internal pressure when subjected to fire exposure. Five gallon safety cans, with spouts, cost between $60 and $125 and are intended to store a number of volatile liquids. In stark contrast, portable plastic consumer gasoline containers are not made for the industrial setting, are made to contain only gasoline, and cost between $5 and $10 in 2007. There are no OSHA requirements for a flame arrestor in portable consumer gas cans. Nor are there any other government regulations requiring flame arrestors in portable consumer gas cans. Nor are there currently any voluntary standards requiring flame arrestors in portable consumer gas cans. Rondinone agrees

that there is not now, nor has there ever been a requirement to put a flame arrestor in portable plastic consumer gasoline containers. Ex. B at 170:13-18.

### D. Rondinone's Testimony Will Not Assist the Trier of Fact.

In order to be admissible, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. Rondinone's testimony regarding his alternative design "concept" will not help the jury evaluate whether a feasible alternative safer design exists when determining whether the Blitz portable gasoline container is defectively designed. As with Husky, Rondinone's "testimony hardly advance[s] the plaintiffs' cause and quite clearly [is] insufficient to prove a defect." *Husky*, 434 So. 2d at 993. With WPI's testing showing contradictory results, Rondinone cannot "say whether the presence of an arrestor would have made any difference in this case" which in turn "totally negates the evidentiary value, if any, of his opinion." *Id.*

### IV. RONDINONE'S OPINION THAT THE GASOLINE CONTAINER WARNING IS INADEQUATE IS INADMISSIBLE

The Blitz warning labels consist of raised uppercase lettering manufactured into two sides of the container. The warnings compete with no other product information on the side panels where they are contained. The embossed, raised lettering permits the warning to exist on the product for its entire useful life. The embossed warnings contain this language:

```
              GASOLINE
              EXTREMELY FLAMMABLE
  DANGER –   VAPORS CAN EXPLODE
              HARMFUL OR FATAL IF
              SWALLOWED

  CAREFULLY READ ALL
  CAUTIONS ON BOTH SIDES

  NON-METALLIC PETROLEUM PRODUCT
  CONTAINER, CLASSIFIED BY UNDER-
  WRITERS LABORATORIES, INC® IN
```

```
                     GASOLINE

              EXTREMELY FLAMMABLE
   DANGER –    VAPORS CAN EXPLODE
              HARMFUL OR FATAL IF
              SWALLOWED

  IF SWALLOWED DO NOT INDUCE VOMITING,
  CALL PHYSICIAN IMMEDIATELY $ KEEP OUT
  OF REACH OF CHILDREN $ AVOID PRO-
  LONGED BREATHING OF VAPORS $ DO NOT
  SIPHON BY MOUTH $ DO NOT STORE IN
  VEHICLE OR LIVING SPACE $ STORE AND
  USE IN WELL-VENTILATED AREA $ VAPORS
  CAN BE IGNITED BY A SPARK OF FLAME
  SOURCE MANY FEET AWAY $ KEEP AWAY
  FROM FLAME, PILOT LIGHT, STOVES,
  HEATERS, ELECTRIC MOTORS, AND OTHER
  SOURCES OF IGNITION $ KEEP CONTAINER
  CLOSED $PLACE CONTAINER ON GROUND
```

Rondinone is critical of the conspicuousness of the Blitz warning because it is presented in red letters on the red background of the can. Ex. A at 5F.

In addition to the embossed warnings, the Blitz container also had a sticker label that included the following language:

```
              CAUTION
      Never use gas to start a fire.
    May cause severe injury or death.
```

Rondinone acknowledges that the sticker label contained these warnings; the sticker warnings were on the subject gas can; and that the sticker warnings were of contrasting colors. Ex. B at 174:4-11.

### A.    Rondinone is Not Qualified to Offer the Opinion.

Rondinone does not have a degree in human factors engineering or a certification or degree in warnings, and he has never been qualified as an expert in warnings or human factors. There is nothing in Rondinone's curriculum vitae to indicate that he has any education or training with respect to warnings for consumer products. The analysis of human factors is necessary in evaluating both the adequacy of a warning and the possible existence of a feasible alternative design. Rondinone's background as an engineer does not qualify him to offer an opinion about the adequacy of the warning on a Blitz portable plastic consumer gasoline container. *See McCullock v. H.B. Four Co.*, 981 F.2d 656, 657-58 (2d Cir. 1992) (affirming ruling that an electrical and industrial engineer with experience in the safety field was not qualified to testify on the adequacy of warning labels).

### B.  Rondinone's Opinion Does Not Have a Reliable Basis.

Rondinone criticisms of the warnings are that "red on red is not conspicuous and warnings have been found to be ineffective for much of the population." Ex. A at 5F. He goes on to state that the "warnings are often inconspicuous and insufficient from a standpoint of credibly informing the user about the identified risks, hazards, and dangers of internal gas can explosions." Ex. A at 5N. Rondinone has not composed any specific language that he believes the Blitz warning should contain. Rondinone's opinion regarding the adequacy of the Blitz warning should be excluded because he has

not designed or tested an alternative warning. *See Vandiver v. Ohio River Company, LLC*, 174 Fed. Appx. 206, 208 (5th Cir. 2006) (affirming ruling that a human factors expert was not qualified to testify on the adequacy of a warning "after he acknowledged that testing would be required to determine the effectiveness of his proposed warnings and that he had not done such testing."); *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F 3d 1076, 1084 (8th Cir. 1999) (affirming exclusion of expert testimony regarding the adequacy of warnings where experts had not created or designed a more appropriate warning or tested its effectiveness).

In addition, as described below, Justin Rukse understood all of the warnings and hazards associated with gasoline, and therefore the adequacy of the warnings on the subject can are not even relevant.

### C. Rondinone's Opinion About the Warnings is Not Generally Accepted in the Combustion and Fire Safety Communities.

Rondinone believes that the warnings are ineffective. Ex. A at 5F. Rondinone provides no specific support for this opinion, and therefore, it should be barred. The Blitz warnings meet the requirements of the applicable ASTM standard, F 839, as noted on the container.

### D. Rondinone's Opinion Does Not Fit the Facts of this Case.

To prevail on a failure to warn claim under Florida law, a plaintiff must prove: "(1) that the warnings accompanying the item were inadequate; (2) that the inadequacy of the warnings proximately caused [the plaintiff's] injury; and (3) that [the plaintiff] in fact suffered an injury by using the product." *Colville v. Pharmacia & Upjohn Co.*, 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008). In other words, Plaintiff must show that a warning would have altered Justin Rukse's behavior. This is a burden Plaintiff cannot

meet, as Rukse was well aware of the dangers of the misuse of gasoline as evidenced by his own testimony. He knew that gasoline was extremely flammable; he knew vapors could explode; he knew that gasoline and fire could be a lethal combination; he knew that gasoline and fire create the risk of severe injuries; he knew the danger could cause death; and he knew to warn his children to not pour gas on fire. Ex. F at 35:6-37:8; 38:19; 39:4-21; 81:10-22; 83:8-11; 130:25-131:10.

Based on Justin Rukse's testimony about his knowledge that gasoline, fire, and children do not mix, Rondinone admits that "different labeling or different contrasting colors on this can . . . would have very little effect" in this case. Ex. B at 175:11-18. As such, Rondinone's opinion about the adequacy of the Blitz warning is irrelevant.

### E. Rondinone's Testimony Will Not Assist the Trier of Fact.

Rondinone's opinion regarding the adequacy of the warning should be excluded because it is based on speculation and not "scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rondinone does not provide the specialized knowledge to assist the trier of fact as to whether the warnings on the Blitz can are conspicuous or adequate. Whether the warnings were conspicuous or adequate is not an issue requiring expert testimony. Rondinone's testimony regarding his criticisms of the warnings will not help the jury evaluate the adequacy of the warnings.

### V. RONDINONE'S OPINION THAT THE SPOUT DID NOT INCORPORATE A CHILD-RESISTANT CLOSURE IS INADMISSIBLE

#### A. Rondinone is Not Qualified to Offer the Opinion.

Rondinone has no experience designing portable consumer gasoline containers or child-resistant closures. Persons with no design experience or expertise with

portable consumer gasoline containers should not be permitted to offer such expert testimony. Rondinone's experience in mechanical engineering does not qualify him to opine that the consumer container is lacking a child-resistant closure on the spout.

### B. Rondinone's Opinion Does Not Have a Reliable Basis.

In 1999, ASTM Subcommittee F15.10 formed a task group to evaluate the possibility of a voluntary standard of child-resistant closures for consumer gasoline containers, and in February 2001, they issued a provisional standard, PS119-01. The provisional standard expired in February 2003 before being converted to a full consensus standard. The task force then worked on a standard more specific to the characteristics of consumer gasoline containers and in September 2005 F2517-05 was approved. Ex.G. The voluntary[2] standard does not contain design requirements for child-resistant closures but contains testing protocols and procedures to ensure that manufacturers meet specific performance criteria that prevent the majority of children younger than five years old from opening the closure. The design of the child-resistant closure is left to the discretion of the manufacturer. ASTM Standard F2517-05 remained a voluntary standard until the Children's Gasoline Burn Prevention Act was enacted on July 17, 2008. The Act requires that all portable consumer gasoline containers that are manufactured for sale after January 17, 2009, conform to F2517-05.

The subject gasoline container, a Blitz Self-Venting model, was manufactured on July 16, 2007, and the spout as manufactured in July 2006. As such, both the container and the spout were manufactured after the approval of voluntary standard F2517-05. Blitz designed both the container opening and the spout opening to incorporate a child-resistant feature and had the two openings tested pursuant to the standard. The

---

[2] Rondinone admits in his deposition that the 2005 standard was voluntary. Ex. B at 143:24-25; 169:23-25.

16

opening of the container on the subject gas can employed a child-resistant closure involving a tab molded into the container that prevents the removal of the threaded cap unless the user is able to depress restraints on the cap. The spout also included a child-resistant feature which requires the alignment of the arrow on the spout and the arrow on the cap in order to remove the cap from the spout. In September 2002, both of these child-resistant features were tested by Great Lakes Marketing, and the tests results showed that the closures met and exceeded the requirements of the ASTM voluntary standard on child-resistant closures. Ex. H and I.

### C. Rondinone's Opinion About the Spout on the Subject Gas Can is Incorrect and Does Not Fit the Facts of this Case.

As set forth above, Rondinone's statement that the subject gas can did not incorporate a child-resistant closure is incorrect. In both his report and his deposition, Rondinone indicates and presents as expert opinion that the spout closure of the subject gasoline container was not designed, manufactured, or tested to be a child-resistant closure. Ex. A at 5Y and Ex. B at 145:22-23. To the contrary, the subject gas can was designed, manufactured, and tested with two child-resistant closures which met and exceeded the requirements of ASTM Standard F2517-05.

### D. Rondinone's Testimony Will Not Assist the Trier of Fact.

Rondinone's opinion that the subject gasoline container did not incorporate a child-resistant feature should be excluded because it is based on an incorrect statement and not "scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

### VI.   RONDINONE'S OTHER "OPINIONS" ARE NOT OPINIONS AND ARE NOT THE PROPER SUBJECT OF EXPERT TESTIMONY

17

Rondinone lists 25 separately-lettered "opinions" on pages 5-8 of his Report. His opinions regarding design and warning defects, as well as child-resistant closures, are found interspersed throughout these additional opinions and, as set forth above, those opinions are inadmissible. The other "opinions" contained in the listings should be excluded because they consist of facts (mostly disputed), improper speculation, vague and misleading statements, and improper legal conclusions.

**Separately-Lettered "Opinions" in Rondinone's Report.**

| | |
|---|---|
| **Opinions A-C.** | These are misleading factual statements presented as opinions that do not pertain to the product at issue. |
| **Opinion D-E.** | This is a legal conclusion that improperly invades the province of the jury and is not limited to the product at issue. |
| **Opinion F.** | Duty is a legal conclusion that improperly invades the province of the jury. Rondinone is not qualified to opine on this issue. |
| **Opinion H.** | The sentence is vague and unintelligible. |
| **Opinion I.** | These statements present disputed facts as opinion and also are misleading and irrelevant because they are not limited to the product at issue. |
| **Opinion J.** | Unreasonably dangerous is a legal conclusion that improperly invades the province of the jury. |
| **Opinions K-L.** | These are vague and disputed factual statements presented as opinions and are not limited to the product at issue. |
| **Opinion M.** | This paragraph presents disputed facts as opinions, is baseless, and improperly invades the province of the jury. |
| **Opinion N.** | This paragraph presents disputed facts as opinions, is baseless, is not limited to the product at issue, and improperly invades the province of the jury. |

| | |
|---|---|
| **Opinions O, Q-R.** | These are misleading factual statements presented as opinions. |
| **Opinion T.** | This is a disputed factual statement presented as opinion. |
| **Opinion U.** | Notice is a legal conclusion. Rondinone, an engineer, is not qualified to offer such an opinion and his testimony would invade the province of the jury. This paragraph also presents disputed facts as opinions. |
| **Opinion V.** | This is a misleading factual statement presented as opinion that does not pertain to the product at issue. |
| **Opinion W-X.** | These are misleading factual statements presented as opinions. |

## VII. CONCLUSION

For the foregoing reasons, Wal-Mart respectfully requests that the Court grant this Motion to Exclude the Testimony of Plaintiff's Expert, David Rondinone, Ph.D., P.E., and grant such other relief as the Court may deem just and proper.

### CERTIFICATE OF LOCAL RULE 7.1(B) ATTORNEY CONFERENCE

Pursuant to Local Rule 7.1(B), undersigned counsel has communicated with Plaintiff's counsel to discuss the issues set forth in this motion, and in a good faith attempt to resolve the issues presented herein. No agreement has been reached on any issue, and counsel for Plaintiff does not agree to the requested relief.

\* \* \* \* \* \* \* \* \* \*

**CERTIFICATE OF SERVICE**

I hereby certify that on _September 18, 2015_, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that a copy of same has been provided to all counsel of record listed below via the CM/ECF portal.

Kenneth J. Wilson, Esq.
Brady R. Thomas, Esq.
Chris Moore, Esq.
Daniel Haltiwanger, Esq.
Richardson, Patrick, Westbrook & Brickman, LLC
PO Box 1368
1730 Jackson Street
Barnwell, SC 29812
Attorneys for Plaintiff

J. Andrew Talbert
Florida Bar No.: 0106003
Quintairos, Prieto, Wood & Boyer, P.A.
114 East Gregory Street, 2nd Floor
Pensacola, FL 32502
Telephone:   (850) 434-6490
Facsimile:   (850) 434-6491
E-Mail: atalbert@qpwblaw.com
Attorney for Defendant

Craig Phillips
Arizona Bar No.:
Lewis Roca Rothgerber LLP
201 E. Washington Street
Phoenix, AZ  85004-2595
Telephone:   (602) 262-5345
Facsimile:   (602) 734-3795
Email: CPhillip@LRRLaw.com
Attorney for Defendant

20